IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DOMINIC DEWAYNE SIMS, ) | |
| ID # 1779162, ) | |
|     Petitioner, ) | |
| vs. ) | No. 3:15-CV-3646-L (BH) |
| ) | |
| LORIE DAVIS,[1] Director, ) | Referred to U.S. Magistrate Judge |
| Texas Department of Criminal ) | |
| Justice, Correctional Institutions Division, ) | |
|     Respondent. ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order 3-251*, this habeas case has been referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the petition for writ of habeas corpus under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**I.  BACKGROUND**

On March 25, 2010, the State indicted Dominic Dewayne Sims (Petitioner) for aggravated sexual assault in Cause No. F10-52320. (Doc. 15-2 at 11.)[2] He pleaded not guilty and was tried before a jury in the 195th Judicial District Court of Dallas County, Texas, on January 26-30, 2009.

**A.    Trial and Appeal**[3]

The victim, a prostitute, was walking and looking for clients at about 10 p.m., when Petitioner pulled up in a car. (*See* doc. 15-6 at 19-20.) She recognized him because they had consensual sex about four months earlier. (*See id*. at 20.) She got into Petitioner' car and agreed

---

[1] Lorie Davis succeeded William Stephens as Director of the Correctional Institutions Division of the Texas Department of Criminal Justice. Under Rule 25(d) of the Federal Rules of Civil Procedure, she "is automatically substituted as a party."

[2] Page citations refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[3] The summary of the evidence at trial is taken from the state appellate court's opinion, except as noted. *See Sims v. State*, 05-12-00413-CR, 2013 WL 2446281 at *1 (Tex. App. – Dallas June 4, 2013).

to have sex with him for $20, and he paid her $10. They used drugs, and then Petitioner told her to remove her clothes. She refused until he paid her the remaining $10. He refused to pay any more until they had sex. The victim attempted to get out of the car, but he beat her with his hands and told her to take off her clothes, and she complied. (*See id*. at 27, 55.) He put his penis into her vagina. In the early morning of February 14, 2010, he called 911 and told her to "tell them I found you like this." (*See id*. at 29, 55.) When the paramedics arrived, he got out of the car and took her to the paramedics. (*See id*. at 56.) She testified that when the paramedics arrived, she kept falling down and she thought that she had a stroke. (*See id*. at 30.)

After police talked to the victim at the scene, they arrested Petitioner for assault and public intoxication. (*See id*. at 65, 68-69.) She gave a later statement to the police, and the charge was changed to aggravated sexual assault. (*See id*. at 70-71.)

A detective testified that after talking to the victim, he "made an attempt to go to the jail and talk to [Petitioner,] at which time he declined to talk to me until he talked to his attorney first." (*See id*. at 87.) There were blood stains in the car. (*See id*. at 89-90.) He took buccal swabs for DNA sampling from the inside of Petitioner's cheek after obtaining a search warrant, since Petitioner had refused to talk to him. (*See id*. at 91.) On cross-examination, he testified that the victim said that she did not have sex with Petitioner previously. (*See id*. at 94-95.) She told him that Petitioner took her clothes off. (*See id*. at 94.)

The victim provided a medical history at the hospital, during which she said that she had sex on the morning of February 13. (*See id*. at 121-22.) At trial, she testified on cross-examination that she did not have sex with anyone prior to leaving her apartment. (*See id*. at 41-42.) DNA test results of vaginal swabs resulted in DNA that corresponded to Petitioner and DNA that

2

corresponded to an unknown male. (*See id*. at 144.) DNA test results of her clothing showed DNA that corresponded to Petitioner and DNA that corresponded to a second unknown male. (*See id*. at 140-144.)

The doctor who examined the victim after the offense testified that her face was completely swollen; she had a bloody nose, a swollen lip and a laceration on her lip; and her jaw was broken.

In closing, defense counsel pointed out the contradictions between the victim's testimony and her prior statements. He argued that she testified that she and Petitioner previously had consensual sex, but she told the detective that they did not have sex previously. He argued that she told the police that Petitioner took off her clothes, but she testified that she removed them. She testified that she did not have sex with anyone prior to leaving the apartment, but she told hospital personnel that she had sex on February 13, and the offense occurred at around midnight on February 14. He argued that if the jury was going to find Petitioner guilty, it should be for aggravated assault because that was what he was guilty of, since the sex was consensual. (*See id*. at 21-26.)

The jury convicted Petitioner of aggravated sexual assault. (Doc. 15-2 at 76.) On March 22, 2012, it sentenced him to 60 years' imprisonment. (*Id.*) The judgment was affirmed on appeal on June 4, 2013. *Sims*, 2010 WL 2674655. His petition for discretionary review was refused on September 18, 2013. *Sims v. State*, No. PD-831-13 (Tex. Crim. App. Sept. 18, 2013).

**B.     State Habeas Proceedings**

Petitioner's state habeas application, signed on September 20, 2014, was received by the state court on October 1, 2014. (Doc. 15-17 at 27.) Counsel submitted an affidavit in response to Petitioner's claims of ineffective assistance of counsel. (Doc. 15-17 at 13.) The state habeas court issued findings of fact and conclusions of law on August 20, 2014. (Doc. 15-17 at 5, 12.) On

3

September 16, 2015, the Texas Court of Criminal Appeals denied the application on the findings of the trial court without written order. (Doc. 15-14); *see Ex parte Sims*, No. WR-83,104-01 (Tex. Crim. App. Sept. 16, 2015).

**C.     Substantive Claims**

Petitioner's habeas petition, signed on November 6, 2015, challenges his conviction on the following grounds:

(1) Trial counsel was ineffective because he:

(a) failed to object to the victim's speculative testimony that she had a stroke;

(b) failed to object to the indictment;

(c) failed to object to testimony about his post-arrest silence;

(d) failed to cross-examine the victim about her testimony that she did not have sex with anyone prior to meeting Petitioner;

(e) failed to ask the doctor how he could conclude that the victim's jaw was broken without taking x-rays;

(2) The state habeas court denied the habeas application before Petitioner could respond to the state's proposed findings.

(Doc. 1 at 6-14.) Lorie Davis, Director of the Texas Department of Criminal Justice (TDCJ), Correctional Institutions Division (Respondent), filed a response on March 4, 2016. (Doc. 19.)

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions.

4

Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). As for the "unreasonable application" standard, a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly

5

established federal law was objectively unreasonable." *Id.* at 409; accord *Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Petitioner contends that his trial counsel rendered ineffective assistance.

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. It guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *Id.* at 687. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance."

6

*Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

To show prejudice in the sentencing context, the Petitioner must demonstrate that the alleged deficiency of counsel created a reasonable probability that his or her sentence would have been less harsh. *See Glover v. United States*, 531 U.S. 198, 200 (2001) (holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice"). One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are insufficient to obtain relief under § 2255. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

**A.     Stroke**

Petitioner contends that counsel should have objected to the victim's speculative testimony

7

that she thought that she had a stroke because there were no hospital records that showed that she suffered a stroke.

Counsel's state habeas affidavit averred that he objected to the victim's testimony when he believed that there was a legal basis for an objection. (*See* doc. 15-17 at 13.) The state habeas court found that counsel was credible, Petitioner did not show a basis for objecting to any of the testimony, and he did not show that he was prejudiced by the lack of an objection. (*See id*. at 6-7.)

Petitioner has not shown that there was a legal basis for an objection or that he was prejudiced by counsel's failure to object. The victim's testimony about a stroke was only relevant to show serious bodily injury, and there was medical evidence that she suffered serious bodily injury in the form of a broken jaw. Additionally, counsel admitted in closing argument that Petitioner was guilty of aggravated assault, which included the element of serious bodily injury.

Petitioner has not shown that the state court's rejection of this claim was unreasonable.

**B.    Indictment**

Petitioner contends that counsel should have objected to the indictment because the victim did not initially report to police that she was sexually assaulted.

Counsel averred that there was no basis for moving to quash the indictment, and the state habeas court found that Petitioner did not show that there was any basis for quashing the indictment. (*See* doc. 15-17 at 7, 13.) He has not shown that the state habeas court's state law determination regarding the lack of a basis for objecting to the indictment was unreasonable. Counsel was not ineffective for failing to raise a meritless objection. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999); *see also Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("counsel is not required to make futile motions or objections").

8

    C.    **<u>Post-arrest Silence</u>**

Petitioner contends that counsel should have objected to the detective's testimony about his post-arrest silence.

"[T]he use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving Miranda warnings, violate[s] the Due Process Clause of the Fourteenth Amendment." *Doyle v. Ohio*, 426 U.S. 610, 619–20 (1976); *see also United States v. Garcia–Flores*, 246 F.3d 451, 457 (5th Cir. 2001) ("[a] *Doyle* violation occurs when the government comments on the defendant's silence to rebut the defendant's exculpatory story"). Here, however, the detective's testimony was not used for impeachment purposes, so *Doyle* does not apply. *See Beall v. Cockrell*, 174 F. Supp. 2d 512, 522 (N.D. Tex. Oct. 18, 2001). Counsel was not ineffective for failing to raise a meritless objection. *See Kimler*, 167 F.3d at 893; *see also Koch*, 907 F.2d at 527.

Petitioner has not shown how he was prejudiced. As discussed, counsel admitted that Petitioner committed aggravated assault but argued that he was not guilty of aggravated sexual assault because the sex was consensual. The issue was the victim's credibility about whether she was sexually assaulted. The brief mention of Petitioner's post-arrest silence was not made in the context of that issue, and the prosecutors did not refer to the testimony in closing argument. He has not shown that the state court's rejection of the claim was unreasonable.

    D.    **<u>Cross-examination of the victim</u>**

Petitioner contends that counsel failed to cross-examine the victim about her testimony that she did not have sex with anyone prior to meeting Petitioner.

Counsel averred and the state habeas court found that his cross-examination of the victim was strategic. (*See* doc. 15-7 at 6-7, 13.) In closing argument, counsel pointed out contradictions

9

between the victim's testimony and what she told the police and hospital personnel.  Petitioner has not shown that counsel's strategic decision to argue the matter to the jury rather than providing the victim with the opportunity to explain any contradictions was unsound.  He has not shown that the state court's rejection of this claim was unreasonable.

**E.     X-rays**

Petitioner contends that counsel failed to ask the doctor how he could conclude that the victim's jaw was broken without taking x-rays.

Petitioner has not shown what the doctor's answer would have been if asked how he knew that her jaw was broken.  He has not shown that her jaw not broken, that the doctor's examination of her jaw was flawed, or that cross-examination of the doctor regarding x-rays would have been productive.  He has not shown that counsel lacked sound strategy in not asking the doctor about x-rays, or that he was prejudiced by the lack of such cross-examination.  He has not shown that the state court's rejection of this claim was unreasonable.

## IV.  STATE HABEAS PROCEEDING

Petitioner contends that he had thirty days to respond to the State's proposed state habeas findings, but the Court of Criminal Appeals denied the state application before his time to respond expired.

Federal habeas relief cannot be had "absent the allegation by a [Petitioner] that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States."  *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995).  The courts entertain federal petitions under § 2254 "only on the ground" that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."  *See* 28 U.S.C. § 2254(a).  Courts cannot grant

10

habeas corpus relief to correct alleged errors in state habeas proceedings. *See Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999) (holding that habeas relief was not available for such alleged errors); *see also Morris v. Cain*, 186 F.3d 581, 585 n. 6 (5th Cir. 1999) ("errors in state postconviction proceedings will not, in and of themselves, entitle a Petitioner to federal habeas relief"); *Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997) ( "infirmities in state habeas [and other post-conviction] proceedings do not constitute grounds for relief in federal court"). Because he complains of error in the state proceedings, Petitioner has not shown that he is entitled to relief on this claim.

## V.  EVIDENTIARY HEARING

Upon review of the pleadings and the proceedings held in state court as reflected in the state court records, an evidentiary hearing appears unnecessary. Petitioner has not shown he is entitled to an evidentiary hearing.

## VI.  RECOMMENDATION

The petition for habeas corpus relief under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**SO RECOMMENDED** this 23rd day of October, 2017.

*/s/ Irma Carrillo Ramirez*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

11

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE